AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| United States of America<br>v.<br><br>Tony Lee Page<br><br>*Defendant(s)* | Case No. 22-5056MJ |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about February 9, 2022, in the County of Maricopa, in the District of Arizona, Tony Lee Page, knowing and in reckless disregard of the fact that certain aliens, namely: Santiago Edgar Herrera-Gonzalez, Jose Miguel Herrera-Merino and Moises Herrera-Tapia had come to, entered, and remained in the United States in violation of law, did knowingly transport and move said alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

In violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

This criminal complaint is based on these facts:

See Attached Statement of Probable Cause, Incorporated by Reference Herein

☒ Continued on the attached sheet.

ANTHONY R LUCERO
*Digitally signed by ANTHONY R LUCERO*
*Date: 2022.02.09 12:15:33 -07'00'*

*Complainant's signature*
Anthony R. Lucero, Border Patrol Agent
*Printed name and title*

Reviewed by AUSA William Rubens

Sworn to telephonically and signed electronically.

Date: Feb. 9, 2022  1:31 pm

City and state: Phoenix, Arizona

*Judge's signature*

Honorable Deborah M. Fine, U.S. Magistrate Judge
*Printed name and title*

## STATEMENT OF PROBABLE CAUSE

I, Anthony R. Lucero, a Border Patrol Agent with the United States Border Patrol, being duly sworn, declare and state as follows:

### INTRODUCTION AND BACKGROUND OF AFFIANT

1. Your affiant is a United States Border Patrol agent. I have been a Border Patrol Agent for 12 years. During that time, I have routinely handled immigration inspections related to fraud, alien smuggling, drug smuggling, and I am currently a member of the Phoenix Prosecutions and Intelligence team.

2. In preparing this Affidavit, I conferred with other law enforcement officials, who share the opinions and conclusions stated herein. I have personal knowledge of the following facts or have learned them from other law enforcement officers. I also relied on my training, experience, and background in law enforcement to evaluate this information. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for a complaint, I have not included every fact or source of information establishing the violation of federal law.

### PROBABLE CAUSE

3. On or about February 9, 2022, near Gila Bend, Maricopa County, Arizona, within the District of Arizona, Border Patrol Agent Ruben A. Ortega was performing assigned duties at the Border Patrol Immigration Checkpoint located near mile marker 18 on State Route 85 in Gila Bend, Arizona. At approximately 2:29 AM, a maroon Cadillac Escalade, bearing AZ plate KLA31F approached the primary inspection area of the Immigration Checkpoint. As the vehicle approached, Agent Ortega noticed the vehicle windows were tinted dark and only the driver window was down. Agent Ortega asked the driver, later identified as Tony Lee Page (hereinafter PAGE), where he was coming from, to which PAGE replied, a party. Agent Ortega then asked PAGE to roll down the rear driver side window, PAGE complied and rolled the window down halfway. At this point Agent Ortega observed three men, hunched over in the rear seat covering their faces. The

three men, later identified as Santiago Edgar Herrera-Gonzalez (hereinafter HERRERA-Gonzalez), Jose Miguel Herrera-Merino (hereinafter HERRERA-Merino) and Moises Herrera-Tapia (hereinafter HERRERA-Tapia), were also wearing camouflage which is common clothing to be worn for people who are being smuggled into the United States. At this point Agent Ortega returned to the driver window and asked PAGE for his driver's license, PAGE then handed his drivers license to Agent Ortega and was asked by Agent Ortega to park in the secondary inspection area for further questioning.

4. At the secondary inspection area Agent Ortega instructed PAGE to put the vehicle in park and shut it off. While PAGE was complying with the directions he was given, Agent Ortega noticed that the ignition for the vehicle was torn apart, and that PAGE was using a screwdriver to turn the vehicle on and off. Agent Ortega then asked PAGE if the vehicle was stolen, PAGE stated "not that I know" then PAGE stated that the vehicle was his friend Courtney's that he had borrowed.

5. Agent Ortega asked PAGE how he knew the people in the back seat, PAGE said that they were friends and that he was giving them a ride. Agent Ortega then turned to the three men in the back seat and asked, in English, where they were coming from, none of them replied to his question, indicating that none of them spoke english. Agent Ortega then asked all three men in the back seat, in Spanish, if they had just crossed into the United States, to this they all replied that yes, they had. Continuing in Spanish Agent Ortega asked if they were here in the United States illegally and again, they all replied yes. None of the three men in the back seat were in possession of documents allowing them to remain in or pass through the United States legally, HERRERA-Gonzalez, HERRERA-Merino and HERRERA-Tapia were all found to be citizens and nationals of Mexico. At this time Agent Ortega placed all four of the occupants under arrest and transported them back to the Ajo Border Patrol Station for further processing.

6. At the Ajo Station, agents read PAGE his Miranda Rights, which he waived

and agreed to an interview. PAGE stated that he was contacted by a man named "Chino" via WhatsApp asking if he would be interested in picking some people up on the Indian Reservation for money. PAGE indicated that he had done similar jobs like this for Chino on three separate occasions, PAGE admitted that in the past he knew he was picking up and transporting illegals and that he was also paid $1,800 in United States currency per individual that he transported. PAGE then stated that he was unsure how much he would be paid on this trip, and he was also unsure if the individuals he picked up on this occasion were illegally present in the United States. PAGE stated that he did not know how many people he was picking up, all that he had was a pickup location he received from Chino via WhatsApp. PAGE said that he picked up the three people in the middle of the desert and then began to transport them back towards Phoenix, Arizona. PAGE stated that none of the passengers spoke English therefor there was no communication between PAGE and the passengers. PAGE also stated that he did not know the drop off location for these individuals as it was supposed to be given to him as he got closer to Phoenix.

7.   HERRERA-Tapia was ordered removed from the United States on August 15, 2016. On August 20, 2016, HERRERA-Tapia was in fact removed from the United States through the San Ysidro Port of Entry in California and sent back to Mexico.

8.   Based on the facts and circumstances stated in this Affidavit, this affiant submits that there is probable cause to believe that on or about February 9, 2022, the defendant, Tony Lee Page, a United States citizen, knowing or in reckless disregard of the fact that that certain aliens, namely: Santiago Edgar Herrera-Gonzalez, Jose Miguel Herrera-Merino and Moises Herrera-Tapia, had come to, entered, or remained in the United States in violation of law, did knowingly transport or move said aliens within the United States by means of transportation or otherwise, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

9. This affidavit was sworn telephonically before a United States Magistrate Judge legally authorized to administer the oath for this purpose.

ANTHONY R LUCERO
Digitally signed by ANTHONY R LUCERO
Date: 2022.02.09 12:14:25 -07'00'

Anthony R. Lucero
Border Patrol Agent
United States Border Patrol

Telephonically sworn to before me this 9 day of February, 2022. @ 1:31 pm

HONORABLE Deborah M. Fine
United States Magistrate Judge